IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01679-NYW

ADRIAN YBARRA,

    Plaintiff,

v.

COMPREHENSIVE SOFTWARE SYSTEMS, LLC, d/b/a TALISYS,

    Defendant.

## ORDER ON PARTIAL MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant Comprehensive Software Systems, LLC, d/b/a Talisys's ("Defendant" or "Talisys") Partial Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion" or "Partial Motion to Dismiss"), filed September 28, 2018. *See* [#18]. This civil action was referred to the undersigned Magistrate Judge to preside over fully for all purposes. *See* [#12]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motion and associated briefing, applicable case law, and the entire docket, the court **GRANTS** the Partial Motion to Dismiss for the reasons stated herein.

## BACKGROUND

    The court draws the following facts from the Amended Complaint, the operative pleading in this matter, and presumes they are true for purposes of the instant Motion. Plaintiff Adrian Ybarra ("Plaintiff" or "Mr. Ybarra") began working as a Software Engineer for Defendant in or about May 2012. *See* [#22 at ¶ 11]. Plaintiff alleges that within six months he received a

"performance-based pay increase" and that his supervisor informed him that he was doing "an excellent job." [*Id.* at ¶ 12]. Mr. Ybarra voluntarily resigned from Talisys on June 5, 2013, but continued working for Talisys as a consultant, and Plaintiff's supervisor allegedly informed Mr. Ybarra that he was eligible for rehire. *See* [*id.* at ¶¶ 16-17].

Mr. Ybarra began working again full-time for Talisys as an Operations Support Specialist on March 3, 2014. *See* [#22 at ¶ 19]. Plaintiff maintains that he "was an exemplary employee for Talisys who performed his job duties satisfactorily or better," and because of his "excellent performance," the Vice President of Software Development offered Plaintiff a position in her department, which Plaintiff declined. *See* [*id.* at ¶¶ 23, 26-27]. About August 2014, as a "result of re-organization," Steve Moran ("Mr. Moran") became Mr. Ybarra's supervisor. *See* [*id.* at ¶ 24]. Not soon after, Plaintiff noticed "concerning behaviors from Mr. Moran and subsequently Mr. Ybarra's co-workers, including sexual and religious based jokes." [*Id.* at ¶ 25]. For instance, in response to an email chain concerning sexually-explicit and religiously-insensitive subject matter, Mr. Ybarra asked Mr. Moran and several co-workers if they "had taken harassment training." *See* [*id.* at ¶¶ 28-34]. Mr. Moran allegedly belittled Plaintiff in response, *see* [*id.* at ¶ 35], and then allegedly spoke ill of Plaintiff to another Talisys employee, *see* [*id.* at ¶ 36]. Plaintiff alleges that Mr. Moran continued to send sexually-explicit, demeaning, and offensive emails to Mr. Ybarra, and that Mr. Moran, along with another co-worker, harassed Mr. Ybarra— Mr. Ybarra believed the harassment stemmed from Mr. Moran's perception of Plaintiff as a homosexual. *See* [*id.* at ¶¶ 37-53].

Plaintiff's issues with Mr. Moran continued when Mr. Moran "verbally attacked" Plaintiff in a meeting. *See* [#22 at ¶ 58]. Following the meeting, Plaintiff addressed his concerns with Mr. Moran directly pursuant to Talisys's 2015 Employee Handbook and 2015 Open Door Policy. *See*

[*id.* at ¶¶ 61-63, 80]. Mr. Moran allegedly stated that he was "'aware' of the behaviors of which Mr. Ybarra was concerned" but that this was just the way Mr. Moran was. *See* [*id.* at ¶¶ 64-68]. Feeling dissatisfied with his meeting with Mr. Moran, Mr. Ybarra levied a formal complaint with TriNet, Talisys's external human resources department, stating that the situation with Mr. Moran was "unbearable" and had worsened since their meeting. *See* [*id.* at ¶¶ 71, 79-80]. TriNet, against Mr. Ybarra's wishes, reported Mr. Ybarra's complaint to Talisys's internal human resources Administrative Director, who then informed Mr. Moran of Plaintiff's complaint. *See* [*id.* at ¶¶ 71-76, 78, 82]. Plaintiff alleges that, though sharing concerns with Mr. Ybarra regarding Mr. Moran's conduct, TriNet took no further action on his complaints. *See* [*id.* at ¶¶ 81, 86].

Roughly five days after his discussions with TriNet Talisys issued a 30-day behavior improvement plan to Mr. Ybarra—his first disciplinary action at Talisys—based not on his work performance but his "attitude." *See* [*id.* at ¶¶ 89-93]. Mr. Moran allegedly stated that he was aware of Plaintiff's complaint with TriNet and that the behavior improvement plan was Defendant's response. *See* [*id.* at ¶¶ 94-95]. Mr. Ybarra soon raised his concerns with TriNet that Talisys was retaliating against him for levying a complaint against Mr. Moran; Plaintiff also raised these concerns with Talisys. *See* [*id.* at ¶¶ 97-104]. Mr. Ybarra alleges that neither TriNet nor Talisys's human resources Administrative Director investigated his retaliation claim, and that Mr. Moran failed to "appropriately administer the [behavior improvement plan] or comply with the conditions stated therein." [*Id.* at ¶¶ 106-09].

Talisys terminated Plaintiff's employment on December 10, 2015, claiming that it was outsourcing his position, though Defendant hired a different employee to handle some of Mr. Ybarra's prior responsibilities. *See* [#22 at ¶¶ 110-12, 119]. Despite an interest in remaining with Talisys and being qualified for additional openings, "Mr. Ybarra was not given the opportunity to

continue working for Talisys in a different role." [*Id.* at ¶¶ 113-14]. Mr. Ybarra filed charges of discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), with the EEOC assuming responsibility for the investigation. *See* [*id.* at ¶¶ 120-121]. On April 3, 2018, the EEOC issued Plaintiff a Notice of Right to Sue letter. *See* [*id.* at ¶ 122]. This suit followed.

Plaintiff now asserts claims against Defendants for sex discrimination ("Claim 1"), harassment ("Claim 2"), and retaliation ("Claim 3") in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; for sex discrimination ("Claim 4"), harassment ("Claim 5"), and retaliation ("Claim 6") in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-301 *et seq.*; and for wrongful discharge in violation of public policy ("Claim 7") for violations of CADA. *See generally* [#22]. On September 28, 2018, Talisys filed its Answer to Claims 1-6 and the instant Motion seeking dismissal of Claim 7. *See* [#18; #20]. Though Plaintiff filed an Amended Complaint as a matter of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Talisys informed the court that the Amended Complaint did not moot its Partial Motion to Dismiss. *See* [#24]. Accordingly, Plaintiff has since responded to the Partial Motion to Dismiss [#26] and Defendant replied [#27]. The Motion is now ripe for disposition, and I consider the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not

rely on mere labels or conclusions, "and a formulistic formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

At issue on the instant Motion is Claim 7, wherein Mr. Ybarra asserts that Talisys wrongfully discharged him in violation of public policy for Talisys's alleged violations of CADA. [#22 at ¶¶ 170-75]. "Absent an express contract providing otherwise, Colorado law presumes that an employment relationship is terminable at will by either party." *Mullin v. Hyatt Residential Grp., Inc.*, 82 F. Supp. 3d 1248, 1251-52 (D. Colo. 2015) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 (Colo. 1992)). But Colorado courts recognize an exception to the at-will employment relationship if the termination stems from the employee's refusal to engage in illegal or unethical conduct or if the employee exercises a job-related right. *See Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547, 551-52 (Colo. 1997) (characterizing the exception as "an employee, whether at-will or otherwise, should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job" (internal quotation marks omitted)). To plead a viable wrongful discharge in violation of public policy ("wrongful discharge") claim,

Mr. Ybarra must allege that (1) Talisys employed Mr. Ybarra, (2) Talisys terminated his employment, and (3) Talisys terminated his employment in retaliation for exercising a job-related right or performing a specific statutory duty, or in violation of a clearly expressed public policy. *See Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1184 (D. Colo. 2016) (applying Colorado law).

Defendant moves to dismiss Claim 7 on two related grounds. First, Defendant argues that Plaintiff cannot maintain a wrongful discharge claim based on Talisys's alleged violations of CADA, because CADA provides Mr. Ybarra with the exclusive remedy he seeks for his alleged wrongful termination. *See* [#18 at 4-17; #27 at 2-15]. Second and relatedly, Defendant argues that Mr. Ybarra cannot maintain a wrongful discharge claim because it is duplicative of his Title VII claims, Claims 1-3. *See* [#17-18].

Plaintiff counters that the Colorado Supreme Court's holding in *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66 (Colo. 1995) as well as case law from this District interpreting *Brooke* establishes that a plaintiff may maintain both a CADA claim and a wrongful discharge claim based on CADA violations, especially when an employer retaliates against an employee for exercising his statutory rights under CADA. *See* [#26 at 4-6, 8-11]. Plaintiff argues that the plain language of the current version of CADA makes clear that: "Nothing in this section precludes a party from asserting any other available statutory or common law claims," Colo. Rev. Stat. § 24-43-405(7), thereby manifesting a clear intent to permit common law wrongful discharge claims to proceed. [#26 at 5]. Mr. Ybarra further argues that courts differentiate between wrongful discharge claims predicated on violations of federal statutes versus state statutes, with only the former prohibiting a stand-alone wrongful discharge claim. *See* [*id.* at 6-8].

On Reply, Defendant maintains that the language is anything but clear, and Colorado law provides that the public policy exception is not available when a statute provides the employee a wrongful discharge remedy, thereby rendering the language inapplicable to this action. [#27 at 4-5]. Defendant further maintains that either CADA or Title VII precludes Plaintiff from proceeding with a distinct common law claim based on violations of those statutes. For the reasons stated below, this court respectfully agrees with Defendant.

I.  **Does CADA Bar Plaintiff's Wrongful Discharge Claim?**

Because Claim 7 arises under state common law and is before the court based on its supplemental jurisdiction, [#22 at ¶ 6], the court looks to state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Parties do not cite, and this court did not independently find, any authority from the Colorado Supreme Court interpreting language from the current version of CADA or addressing the precise issue of whether a wrongful discharge claim remains viable. Nor does it appear that the state appellate courts, which this court would consider strongly persuasive, have passed on it. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000). Thus, this court analyzes the state court precedents on similar issues and the opinions of courts in this District interpreting the application of prior versions of CADA to discern how the Colorado Supreme Court would rule if presented with this precise issue, as "[p]arties who choose to litigate in the federal forum 'must ordinarily accept the federal court's reasonable interpretation of extant state law.'" *Pehle*, 397 F.3d at 900 n.1 (quoting *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1229 (10th Cir. 1996)).

   A.  ***Gamble v. Levitz Furniture Co. of the Midwest Inc.***

In 1988 a panel of the Colorado Court of Appeals considered whether an employee could assert a separate wrongful discharge claim based on disability discrimination in the face of CADA.

7

*See Gamble v. Levitz Furniture Co. of the Midwest Inc.*, 759 P.2d 761, 766 (Colo. App. 1988). The *Gamble* court concluded that a wrongful discharge claim was not available, because CADA provided the employee with a wrongful discharge remedy to vindicate his claim for disability discrimination. *Id.* at 766 (citing *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265 (Colo. App. 1984)). This conclusion preceded the Colorado Supreme Court's analysis in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992), where the Colorado Supreme Court first recognized the public policy exception to at-will employment. Though *Lorenz* noted that appellate courts in other cases had found that a wrongful discharge claim was not available when the statute at issue provides the employee a wrongful discharge remedy which he allegedly pursued, it did not specifically pass on the issue. *Id.* at 107 n.5.

The Colorado Supreme Court originally granted certiorari in *Gamble*, but later denied it as improvidently granted. *Gamble v. Levitz Furniture Co. of Midwest Inc.*, 782 P.2d 1197, 1197-98 (Colo. 1989). But since *Gamble*, both state and federal courts in Colorado have applied it both to CADA and in other contexts. *See, e.g.*, *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003) (citing *Gamble* and holding that the Family Medical Leave Act ("FMLA") barred a wrongful discharge claim based on retaliation for exercising rights under the FMLA because the FMLA provided its own cause of action and remedy); *Gatuma v. Encore Elec., Inc.*, No. 12-CV-01611-MSK-MEH, 2012 WL 5354932, at *1-5 (D. Colo. Oct. 30, 2012) (finding *Gamble* persuasive and holding that CADA precluded a wrongful discharge claim predicated on disability discrimination because CADA provided its own remedy).

    **B.**    ***Brooke v. Restaurant Services, Inc.***

In 1995 the Colorado Supreme Court held, in relevant part, that CADA "is not the exclusive remedy for employment-related sex discrimination." *Brooke*, 906 P.2d at 67. The plaintiff, a

female former employee of the defendants, brought three claims against the defendants for wrongful discharge, tortious interference with contractual relations, and outrageous conduct—all stemming from alleged sex-based discrimination. *See id.* After the trial court dismissed the plaintiff's wrongful discharge and outrageous conduct claims, it granted summary judgment to the defendants on the tortious interference claim because, *inter alia*, CADA provided an exclusive remedy for employment-related sex discrimination claims. *See id.*

In holding otherwise, the Colorado Supreme Court explained that the creation of a private right of action by state statute bars pre-existing common law actions only when the legislature "manifests its intent [to do so] either expressly or by clear implication." *Id.* at 68. The Colorado Supreme Court found no such intent, because CADA "does not provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure" and its remedies "are only incidental to [CADA's] primary purpose of eradicating discriminatory practices by employers" as it did not provide damages otherwise available at common law. *See id.* at 68-69. Accordingly, the Colorado Supreme Court held that CADA did not "explicitly bar" the plaintiff's tortious interference claim predicated on sex discrimination and did not provide the exclusive remedy for employment-related sex discrimination claims. *See id.* at 70. Notably, however, the Colorado Supreme Court did not pass on the plaintiff's wrongful discharge claim. *Id.* at 67 ("On appeal, Brooke contested only the grant of summary judgment on her tortious interference claim."). It also did not address the opinion of the Colorado Court of Appeals in *Gamble*.

C. **Application of *Gamble* and *Brooke* to Mr. Ybarra's Wrongful Discharge Claim**

Since *Brooke*, the Colorado Supreme Court has reiterated that CADA "was not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as

9

defined by the Act." *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1174 (Colo. 2000). But the Colorado trial and appellate courts do not appear to have applied *Brooke* to a claim for wrongful discharge. Nor have the Colorado courts reconciled *Brooke* rulings, both before and after *Brooke*, which held that a wrongful discharge claim is not available when the statute in question provides the employee with a wrongful discharge remedy as announced in *Gamble*.

Indeed, there is even a split in this District as to whether *Brooke* permits a wrongful discharge claim predicated on CADA violations. On one side of the debate, courts in this District have found it permissible for a plaintiff to maintain a wrongful discharge claim predicated on CADA violations. *See, e.g.*, *Kennedy v. Colo. RS, LLC*, 872 F. Supp. 2d 1146, 1149-51 (D. Colo. 2012) (holding that *Brooke* was dispositive on the issue, "and therefore Mr. Kennedy's wrongful discharge claim is *not* barred to the extent it is premised on the CADA." (emphasis in original)); *Marcantonio v. Comcast Cable Commc'ns Mgmt., LLC*, No. 14-CV-03313-KLM, 2016 WL 775689, at *3 (D. Colo. Feb. 29, 2016) (concluding, "the Court is inclined to agree with Plaintiff that a claim for wrongful discharge in violation of CADA is legally cognizable."); *Waters v. AXL Charter Sch.*, No. 12-CV-01384-LTB, 2013 WL 856524, at *10 (D. Colo. Mar. 7, 2013) ("Finally, I note that the law may allow a wrongful discharge claim based on violations of the CADA."). On the other side, courts in this District have found such a claim not cognizable. *See, e.g.*, *Christen-Loper v. Bret's Elec., LLC*, 175 F. Supp. 3d 1213, 1219 (D. Colo. 2016) (discussing *Brooke* but concluding "that a wrongful discharge claim premised upon the CADA is not actionable."); *Spaziani v. Jeppesen Sanderson, Inc.*, No. 14-CV-03261-REB-KMT, 2015 WL 5307971, at *3 (D. Colo. Sept. 11, 2015) (dismissing the plaintiff's wrongful discharge claim predicated on CADA violations, because no such claim "may lie when the statute on which it is premised already provides a remedy for discriminatory or retaliatory discharge."); *Gatuma*, 2012 WL 5354932, at

*1, *5 (finding more persuasive the view that a wrongful discharge claim could not proceed when predicated on CADA violations, because CADA provided the exclusive remedy); *Endahl v. Vinnell Corp.*, No. 04-CV-00426-MSK-PAC, 2006 WL 57496, at *10 (D. Colo. Jan. 10, 2006) (same).

The cases, however, each considered the issue under earlier versions of CADA, which the Job Protection and Civil Rights Enforcement Act of 2013 amended as to remedies for actions accruing on or after January 1, 2015 ("2015 CADA Amendment"). *See* Colo. Rev. Stat. § 24-43-405(3)(7). As amended, a plaintiff may now recover compensatory and punitive damages, *see id.* § 405(3), and has the right to a jury trial when seeking compensatory or punitive damages, *see id.* § 405(4). Having considered the competing positions, this court finds more persuasive those courts concluding that a plaintiff may not maintain a wrongful discharge claim predicated on CADA violations.

Under Colorado law, it is axiomatic that "either an employer or an employee can terminate an at-will employment relationship without incurring legal liability for this termination." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). In *Lorenz*, the Colorado Supreme Court first recognized a public policy exception to an employer's right to discharge an employee when the employee alleges that the discharge was because either (1) she refused to engage in conduct that would violate public policy, or (2) engaged in conduct protected or encouraged as a matter of public policy. *Lorenz*, 823 P.2d at 109. And though some courts read *Brooke* broadly to permit a wrongful discharge claim in any circumstance, I find that such a reading ignores a basic observation by the Colorado Supreme Court:

> We find no indication that the legislature intended to preclude common law sexual harassment claims by enacting the Anti-discrimination Act [CADA]. No provision explicitly precludes common law or other statutory claims. <u>Nor does the Act provide a comprehensive scheme for addressing sex discrimination in the</u>

11

> workplace that otherwise would indicate "by clear implication" the legislature's intent to preclude common law claims.
>
> In particular, the Act does not provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure. . . .

*Brooke*, 906 P.2d at 68 (emphasis added).

Whether characterized as a finding that a wrongful discharge claim is not available for sex discrimination because a remedy exists under CADA, *see Christen-Loper*, 175 F. Supp. 3d at 1222-23, or that the legislature manifested an intent to preempt a wrongful discharge claim based on sex discrimination by clear implication, *see Gatuma*, 2012 WL 5354932, at *5, the result is the same: "for all practical purposes, a claim for wrongful discharge predicated on a public policy of non-discrimination is indistinguishable from a statutory CADA claim of discrimination." *Id.* at *3. Plaintiffs like Mr. Ybarra may (and in his case, have) pursued remedies for wrongful discharge (an employment-related decision affecting his pay, status, or tenure) under CADA. *See Christen-Loper*, 175 F. Supp. 3d at 1222-23 (holding that this was "entirely consistent with the Colorado Supreme Court's holding that the CADA does not preempt otherwise available remedies."). Therefore, this court concludes that the availability of a remedy under CADA for alleged sex discrimination bars a separate claim for wrongful discharge based on sex discrimination. *See Gorkin v. Vinnell Corp.*, No. CIVA03CV02287WDMPAC, 2006 WL 517645, at *5 (D. Colo. Mar. 2, 2006) (dismissing a wrongful discharge claim based on violations of Colorado anti-discrimination statutes because such statutes provided the plaintiff with a remedy).

Mr. Ybarra argues, however, that his wrongful discharge claim may proceed because he bases it on Talisys's retaliation for his exercising a statutory right. *See* [#26 at 10]. Plaintiff cites to the *Christen-Loper* court's discussion of this distinction, and Plaintiff analogizes his wrongful discharge claim to the situations relied on by the *Christen-Loper* court in *Hoyt v. Target Stores*,

12

981 P.2d 188, 192-93 (Colo. App. 1998) and *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372 (Colo. App. 1989). *See* [#26 at 10-11]. It is true that the *Christen-Loper* court found a "difference between wrongful discharge claims premised on an *employer's* violation of a statute and an *employee's* exercise or pursuit of a statutory right, with only those claims premised on the former being unavailable." *Christen-Loper*, 175 F. Supp. 3d at 1223 (emphasis in original). Respectfully, I find no significance in such a distinction in the present action. This is because CADA explicitly prohibits "any person, whether or not an employer" from "discriminat[ing] against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by this part 4." Colo. Rev. Stat. § 24-34-402(e)(IV). Thus, the same nucleus of facts concerning alleged CADA retaliation necessarily involves the employer's statutory violation and the employee's exercise of a statutory right, with CADA providing a remedy for such occurrences. *See Gamble*, 759 P.2d at 766 (holding that a wrongful discharge claim predicated on CADA cannot stand because "the statute in question provides the employee with a wrongful discharge remedy.").

Further, this court agrees with Defendant that both *Hoyt* and *Lathrop* dealt with statutes that did not provide retaliation remedies like CADA. In *Hoyt* the plaintiff premised her wrongful discharge claim on the defendant's retaliation against her for filing a claim under the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, and in *Lathrop* the plaintiff premised his wrongful discharge claim on the defendant's retaliation against him for filing a Workers' Compensation claim under the Workers' Compensation Act of Colorado, Colo. Rev. Stat. § 8-40-101 *et seq.* Neither of these statutes provides a remedy for the alleged retaliation, and thus the divisions of the Colorado Court of Appeals were correct to reject the defendants' arguments that each did so. *See Hoyt*, 981 P.2d at 191-93; *Lathrop*, 770 P.2d at 1372-73.

In sum, I conclude that Mr. Ybarra cannot maintain his wrongful discharge claim (Claim 7) based solely on Defendant's alleged sex discrimination and retaliation in violation of CADA. That is, because CADA already provides a remedy for wrongful discharge, a free-standing wrongful discharge claim predicated on CADA violations is not otherwise available. *See Christen-Loper*, 175 F. Supp. 3d at 1222-23. While this conclusion is sufficient to grant Talisys's Partial Motion to Dismiss, the court briefly addresses whether the wrongful discharge claim is duplicative of and/or precluded by Title VII as this analysis bolsters the court's conclusion above.

## II.  Does Title VII Bar Plaintiff's Wrongful Termination Claim?

Even if the existence of CADA remedies did not bar Claim 7, the court concludes that Title VII also precludes Mr. Ybarra's wrongful discharge claim. For this reason, in addition to those above, I conclude that Mr. Ybarra's wrongful discharge claim is subject to dismissal.

To state a prima facie sex discrimination claim (Claim 1), Mr. Ybarra must establish (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position with Talisys; and (4) he was treated less favorably than others not in the protected class. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009). Regarding Claim 2, "[s]exual harassment in the workplace is a form of sex discrimination prohibited by Title VII." *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014). Such a claim requires Mr. Ybarra to demonstrate "(1) []he is a member of a protected group; (2) []he was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (brackets and internal quotation marks omitted). Mr. Ybarra's retaliation claim (Claim 3) requires a showing that "(1) he . . . engaged in

protected opposition to discrimination; (2) he . . . was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000).

Defendant argues that the court should dismiss Claim 7 because it is duplicative of Mr. Ybarra's Title VII claims, Claims 1-3. *See* [#18 at 17-18 (quoting *Gatuma*, 2012 WL 5354932, at *5)]. While Mr. Ybarra does not directly address this issue, he does argue that courts differentiate between wrongful discharge claims predicated on violations of federal versus state statutes, with only those based on federal statutes being precluded. *See* [#26 at 6-8]. Presumably, Mr. Ybarra suggests that because he predicates his wrongful discharge claim on CADA violations as opposed to Title VII violations, he may proceed with the wrongful discharge claim. But Mr. Ybarra's CADA claims are subject to *the same standards* applicable to his Title VII claims. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010); *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399-400 (Colo. 1997) (adopting the United States Supreme Court's burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in analyzing state employment discrimination claims under CADA). Indeed, because Title VII and CADA "rise and fall together," courts analyze the two statutory claims together. *See Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (quoting *Johnson*, 594 F.3d at 1219 n.11); *see also Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1123 (D. Colo. 2016) ("Likewise, claims alleged under the Colorado counterpart to Title VII, CADA, are also analyzed using the Title VII framework.").

Here, the very same facts giving rise to Plaintiff's CADA claims are the same as those giving rise to his Title VII claims. Thus, I find unconvincing Mr. Ybarra's argument that his wrongful discharge claim may proceed simply because it rests upon violations of CADA as

opposed to violations of Title VII. Rather, it seems clear that because Title VII provides remedies for alleged employment-related discrimination, a wrongful discharge claim based on the same underlying facts cannot stand. *See Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1248-49 (D. Colo. 2003) ("Moreover, Caspar's pursuit of the wrongful discharge claim in addition to her Title VII claim is contrary to established limitations on the nature and reach of the state law claim. . . . The Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy." (applying Colorado law)). Indeed, Mr. Ybarra concedes this point in the context of other federal statutes. *See* [#26 at 6-7]; *see also Stout v. Gyrodata, Inc.*, 560 F. App'x 765, 766-67 (10th Cir. 2014) (affirming the dismissal of the plaintiff's wrongful discharge claim predicated on the filing of an Occupational Safety and Health Administration complaint because the statute provided a wrongful termination remedy); *Hein v. AT&T Operations, Inc.*, No. 09-CV-00291-WYD-CBS, 2010 WL 5313526, at *6 (D. Colo. Dec. 17, 2010) (dismissing a wrongful discharge claim predicated on retaliation in violation of the Sarbanes–Oxley Act of 2002 because the statute provided a wrongful termination remedy); *Krauss*, 66 P.3d at 203 ("Even if employer's discharge of employee violated the FMLA, employee still would not be entitled to recovery on a public policy theory because the FMLA provides its own remedy for retaliatory discharge.").

Based on the foregoing and the reasons discussed above, the court finds no distinction between wrongful discharge claims based on violations of Title VII or CADA. And the cases cited by Plaintiff do not counsel otherwise, because those cases, like *Hoyt* and *Lathrop*, dealt with statutes that <u>do not</u> provide a wrongful discharge remedy. Therefore, because Mr. Ybarra's wrongful discharge claim rests on the same facts underlying his Title VII claims (in addition to his CADA claims), his wrongful discharge claim is also subject to dismissal on this basis. *See*

16

*Gatuma*, 2012 WL 5354932, at *5 ("Even if a free-standing wrongful discharge claim could be pursued in conjunction with a CADA claim, the Court would be inclined to dismiss it as duplicative of the Plaintiff's Title VII race discrimination claim.").

## CONCLUSION

For the reasons stated herein, the court **GRANTS** Defendant's Partial Motion to Dismiss [#18], and **DISMISSES with prejudice** Plaintiff's wrongful discharge claim, Claim 7. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (explaining that dismissal without leave to amend and with prejudice is appropriate where no amendment could cure the defect).

DATED: January 18, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge